Kristen T. Gallagher (NSBN 9561)
Daniel I. Aquino (NSBN 12682)
Tara U. Teegarden (NSBN 15344)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
kgallagher@mcdonaldcarano.com
daquino@mcdonaldcarano.com
tteegarden@ mcdonaldcarano.com

*Attorneys for Defendant College of Southern Nevada*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MELVIN HALE, Ph.D., | Case No:  2:22-cv-01321-CDS-EJY |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| STATE OF NEVADA ex rel. BOARD OF REGENTS FOR THE NEVADA SYSTEM OF HIGHER EDUCATION ON BEHALF OF THE COLLEGE OF SOUTHERN NEVADA, a State of Nevada entity, | **Oral Argument Requested** |
| Defendant. | |

Defendant State of Nevada ex rel. Board of Regents for the Nevada System of Higher Education on behalf of the College of Southern Nevada ("Defendant" or "CSN") hereby moves for summary judgment on all claims asserted by Plaintiff Melvin Hale, Ph.D. ("Plaintiff Hale") in the Amended Complaint.

This Motion for Summary Judgment ("Motion") is supported by the following points and authorities, the pleadings on file with the Court, the evidence set forth in the declarations and exhibits submitted herewith, as well as any oral argument the Court may entertain.

**POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND BACKGROUND**

CSN declined to hire Plaintiff Hale for an eLearning Librarian position because he had no prior professional experience working for a library.  Ultimately, CSN selected a candidate who

possessed over **15 years** of professional experience working in libraries, including the previous six months working as a librarian for CSN, with the exact student population the eLearning Librarian position would require servicing. Contrary to Plaintiff Hale's allegations, neither his race nor his prior discrimination claim against his former employer had any effect on CSN's hiring decision.

Even if Plaintiff Hale had any evidence that CSN was motivated by discriminatory or retaliatory animus (which he does not), he cannot carry his burden to demonstrate that any such animus changed the outcome of CSN's hiring decision. "Experience working in a library setting" was one of only two required qualifications for the eLearning Librarian position (the other being a degree in library science from an accredited program). Plaintiff Hale did not satisfy this basic requirement. Indeed, Plaintiff Hale only passed the screening stages of the application process because CSN's hiring representatives mistakenly believed he possessed professional library experience. However, following Plaintiff Hale's final interview, he clarified that his "professional" library experience was, in fact, merely a brief undergraduate internship occurring nearly 50 years prior to his application for the eLearning Librarian position. Further, while Plaintiff Hale had worked for approximately two years as an Assistant Professor teaching library and information management courses, this constituted working for a school providing academic instruction to graduate students. Plaintiff Hale had never worked for a library, nor had he ever provided professional assistance as a librarian to library patrons.

Once Plaintiff Hale's lack of qualifications for the eLearning Librarian position became apparent, it was a determining factor for denying his application. CSN's decision to instead select a candidate who possessed over 15 years of professional experience working in libraries was not merely legitimate; it was the only reasonable hiring decision. As set forth below, CSN is entitled to summary judgment in its favor.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    CSN's eLearning Librarian Job Posting

The College of Southern Nevada, part of the Nevada System of Higher Education, is a multi-campus community college with multiple main campuses and sites across the Las Vegas

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

valley.  CSN maintains a robust academic and research library system (the "CSN Libraries" department) with three fully staffed campus library locations.  *See* Exhibit 1, Declaration of Bill Dial, ¶ 4.[1]

In January 2022, CSN published a job opening for an eLearning Librarian position at its North Las Vegas Campus Library.  *Id.*, ¶ 5; *see also* Exhibit 3, Position Summary, APEN007-10. The eLearning Librarian position description listed only two "Required Qualifications": (1) "A master's degree in library science from an ALA accredited program," and (2) "**Experience working in a library setting.**" *Id.*, APEN008.  (emphasis added).

**B.**    **CSN'S Hiring Policy and Candidate Evaluation Process**

As required by CSN's Full-Time Academic Faculty Hiring Policy ("Hiring Policy"), CSN appointed a Search Committee of faculty members to screen and evaluate candidates for the eLearning Librarian position.  *See* Exhibit 4, Hiring Policy, APEN011-19.  Under the Hiring Policy, a "first committee" of faculty members would screen candidates for minimum qualifications, conduct initial interviews with the most qualified candidates, and forward the candidates to a second committee to make the final hiring decision.  *Id.*, APEN014.  Given this first committee's role, it was often called the "Screening Committee" or "First Committee." *See generally* Exhibits 5-12, Search Committee Declarations.[2]

The Screening Committee consisted of the following five faculty members[3]:

- Christine Shore, Lead Librarian
- Emily Pattni, eLearning Librarian
- Jason Green, Acquisitions Librarian
- Cassandra Peay, Professor of English
- Geoffrey Kenmuir, English Instructor

*See* Exhibit 5, Declaration of Christine Shore; Exhibit 6, Declaration of Emily Pattni; Exhibit 7, Declaration of Jason Green; Exhibit 8, Declaration of Cassandra Peay; Exhibit 9, Declaration of Geoffrey Kenmuir.

---

[1] *See* https://library.csn.edu/locations; https://library.csn.edu/staffdirectory.
[2] For ease of reference, Defendant will hereinafter refer to this committee as the "Screening Committee."
[3] The positions listed are those held by each individual at the time of serving on the Screening Committee.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Under the Hiring Policy, CSN also appointed a second committee consisting of the Vice President of Academic Affairs, Dean, Department Chair (in this instance, the head of the CSN Libraries department), and the Faculty Senate Chair.  *See* Exhibit 4, Hiring Policy, APEN014. This second committee was tasked with conducting final interviews with the candidates forwarded by the Screening Committee and making the final hiring decision.  *Id*.  Given this second committee's role, it was often called the "Hiring Committee" or the "Second Committee."  *See generally* Exhibits 5-12, Search Committee Declarations.[4]  In the event of any disagreement, the highest-ranking member of the Hiring Committee (the Vice President of Academic Affairs) was authorized to make the final decision on hiring.  *See* Exhibit 4, Hiring Policy, APEN014.

The Hiring Committee consisted of the following faculty members[5]:

- Caprice Roberson, Interim Associate Vice President for Academic Affairs (subsequently Director of CSN Libraries)
- Emily King, Interim Director for CSN Libraries
- Julian Smit, Professor of Psychology (CSN's Faculty Senate Chair)

*See* Exhibit 10, Declaration of Caprice Roberson; Exhibit 11, Declaration of Emily King; Exhibit 12, Declaration of Julian Smit.

### C.     The Final Candidates' Qualifications

Following the preliminary assessment process, the Screening Committee selected two final candidates to interview: Christopher Zahedi and Melvin Hale.  Each candidate submitted a resume and description of their experience, the relevant details of which are set forth below.

#### 1.     Christopher Zahedi's Relevant Qualifications.

At the time of his application for the eLearning Librarian position, Mr. Zahedi was a current CSN employee, having worked as an Adjunct Librarian at CSN Libraries for the preceding six months.  *See* Exhibit 13, Christopher Zahedi's Resume, APEN038-39.  Mr. Zahedi also possessed approximately **15 years** of experience working for the Las Vegas-Clark County Library District, at the Clark County Library and Enterprise Library locations.  *Id.*

---

[4] For ease of reference, Defendant will hereinafter refer to this committee as the "Hiring Committee."

[5] The positions listed are those held by each individual at the time of serving on the Hiring Committee.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD ☆ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

## 2.   Plaintiff Hale's Relevant Qualifications.

At the time of his application for the eLearning Librarian position, Plaintiff Hale had worked for the previous five years as a consultant at an art gallery, entirely unrelated to the library services industry.  *See* Exhibit 14, Plaintiff Hale's Resume, APEN040-54.  After receiving his undergraduate degree in 1977, Plaintiff Hale worked in various positions and fields (wholly unrelated to library services), including as a network engineer, a marketing director, a product manager, and an art gallery owner.  *Id.*, APEN040-44.

In Plaintiff Hale's 45-year professional career, he had only one instance of professional experience related to libraries: for less than two years, from July 2014 to May 2016 (nearly five years before his application for the eLearning Librarian position), Plaintiff Hale worked as an Assistant Professor at Emporia State University in Kansas, where he taught hybrid courses in the School of Library and Information Management.  *Id.*  In this role, Plaintiff Hale did not work for a library serving library patrons.  Instead, he worked for a school as a professor, teaching students applicable curriculum.  *Id.*

When asked during his deposition to describe his experience relevant to the eLearning Librarian position's requirement of "experience working in a library setting," Plaintiff Hale did not identify his work as an Assistant Professor from July 2014 to May 2016.  Instead, he stated: "I worked in a library setting for a year as a reference librarian in college."  *See* Exhibit 15, Plaintiff Hale's Deposition, at 21:22 - 22:9.  Plaintiff Hale stated this occurred at some point in the mid-1970's.  *Id.* ("Seventy -- I don't know the exact years.  Would have been in the '70s, '75, '76, somewhere in there.").  Plaintiff Hale testified that he had no other experience satisfying the eLearning Librarian position's requirement of experience working in a library setting.  *Id.* at 22:10-12.

This distinction was far less clear during the application process, where Plaintiff Hale focused on his academic experience (i.e., as an Assistant Professor) related to library services, while obscuring his lack of professional experience working for a library.  *See* Exhibit 16, Plaintiff Hale's Written Responses to eLearning Librarian Job Requirements, APEN072-78.  Plaintiff Hale used detailed language when describing his experience satisfying many portions of the eLearning

Librarian job description. *Id.* In addition to lengthy descriptions of Plaintiff Hale's library-related academic experience, he included an entire paragraph explaining how his prior role as a district manager for Sears provided him with valuable experience using statistics and metrics. *Id.*, APEN072-77. However, when addressing the requirement of "Experience working in a library setting," Plaintiff Hale simply stated: "YES," with no further explanation. *Id.*, APEN077. Although Plaintiff Hale's basis for this statement was his one-year undergraduate internship in the 1970's (nearly 50 years before his application for the eLearning Librarian position), Plaintiff Hale did not list this experience in his resume submitted to CSN. *See* Exhibit 14, Plaintiff Hale's Resume, APEN040-54.[6]

### D.     The Screening Committee's Interview

On March 4, 2022, the Screening Committee conducted separate video interviews with Plaintiff Hale and Mr. Zahedi. ECF No. 6, ¶ 23. Following these interviews, the Screening Committee prepared a "Strengths and Weaknesses" form, as required by CSN's Hiring Policy. *See* Exhibit 17, Strengths and Weaknesses Form, APEN079-80.

The Screening Committee viewed Mr. Zahedi's strengths as including his "[l]ibrary work experience" and related skills, including that he was "[e]mployed [at CSN] and familiar with the school's demographic and resources," and possessed "a strong understanding of the e-learning environment from a students' perspective." *Id.*

Conversely, the Screening Committee viewed Plaintiff Hale's strengths as including his "[e]xtensive teaching experience" and related knowledge, including that he had "[c]reate[d] a fully developed online environment to give online students an in-person experience." *Id.*

---

[6] As set forth below, members of the Screening Committee did not immediately discern the importance of this distinction, which allowed Plaintiff Hale to advance past the Screening Committee to the final stages of the application process—however, once Plaintiff Hale's lack of relevant experience became apparent to the Hiring Committee (particularly in relation to Mr. Zahedi's 15 years of applicable experience), it became the determining factor for the selection of Mr. Zahedi over Plaintiff Hale.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

The Screening Committee concluded that both candidates were qualified for the eLearning Librarian position, but recommended Plaintiff Hale as its first choice for hire.[7]  *See* Exhibit 18, March 4, 2022 Screening Committee Recommendation Email, APEN081-83.

### E.    The Hiring Committee's Interview and Decision

On March 10, 2022, the Hiring Committee (responsible for making the ultimate hiring decision) conducted separate video interviews with Plaintiff Hale and Mr. Zahedi.  ECF No. 6, ¶ 23.  The Hiring Committee included two senior leaders with significant experience in the library department: Emily King, Interim Director for CSN Libraries (who subsequently assumed the role of Lead Librarian), and Caprice Roberson, Interim Associate Vice President for Academic Affairs (who subsequently assumed the role of Director of CSN Libraries).  *See* Exhibit 11, Declaration of Emily King, ¶ 2; Exhibit 10, Declaration of Caprice Roberson, ¶ 2.

While the Screening Committee had overlooked Plaintiff Hale's lack of specific professional library work experience (instead valuing his inapplicable academic experience as a professor), both Ms. King and Ms. Roberson found this deficiency significant.  When the Hiring Committee interviewed Plaintiff Hale, Ms. King "noted concerns relating to his fundamental understanding of how the eLearning Librarian would serve the library."  *See* Exhibit 11, Declaration of Emily King, ¶ 6.  For example, the Hiring Committee evaluated candidates' ability to conduct a "reference interview," which occurred any time a CSN student asked a librarian for assistance.  *Id*., ¶ 7.  As described by Ms. King, the goal of a reference interview was to "go from what [a] student is asking about to what they actually need, and it is performed by asking probing questions."  *Id*.  CSN's "preferred approach is to meet students where they are (i.e., at their level of understanding) when assisting them."  *Id*., ¶ 8.  However, Plaintiff Hale's interview made clear that "[h]is instructional approach was to get students up to speed where he was," which was based in large part on his "background [] as a professor teaching library students studying to become

---

[7] The Screening Committee appeared to give Plaintiff Hale's academic experience working as an Assistant Professor more weight than Mr. Zahedi's professional experience working in a library. As the Hiring Committee would later determine, the Screening Committee's recommendation was based on a fundamental misunderstanding of the requirements of the eLearning Librarian position.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

librarians (as opposed to assisting a general population of students)." *Id*. To Ms. King, "this was a significant difference in pedagogical approach to what we needed at CSN." *Id*.

Conversely, Ms. King believed that Mr. Zahedi "fielded these questions well" in the Hiring Committee's interview. *Id*., ¶ 9. Due to Mr. Zahedi's experience as a librarian at CSN, he "was able to draw on examples of working with CSN's student population," which was further strengthened by his previous professional library experience "both in public and academic settings." *Id*. During the Hiring Committee's interview, Mr. Zahedi "walked through how he would answer questions in a practical library setting, and gave examples of how he had already answered such questions in his professional experience." *Id*. In doing so, Mr. Zahedi "demonstrated the ability to conduct a reference interview the way CSN prefers." *Id*. To Ms. King, "that alone was sufficient to make the decision that [Mr. Zahedi] was the better candidate," as he had "the exact experience we needed in the eLearning Librarian role." *Id*.

Ms. Roberson, who possessed the final decision-making authority as the Interim Associate Vice President for Academic Affairs, shared Ms. King's concerns. Ms. Roberson noted that the members of the Screening Committee had only "generally evaluated and screened candidates for possession of basic technical ability," while the Hiring Committee "was closely focused on evaluating which of the finalists would be better suited specifically for the eLearning Librarian position." Exhibit 10, Declaration of Caprice Roberson, ¶ 6. Ms. Roberson observed that Plaintiff Hale "went to library school, and went on to a teaching role at that library school," but lacked "experience in practical librarian role." *Id*., ¶ 8. Based on Plaintiff Hale's interview with the Hiring Committee, Ms. Roberson discerned that Plaintiff Hale "taught other students how to be librarians, but he himself did not display the experience working at reference desk or helping students troubleshoot their issues in the library." *Id*. This was a significant distinction for Ms. Roberson, because "[t]here is a big difference between teaching concepts to librarian students and helping the general student population, as a librarian." *Id*.

Ms. Roberson also found that Mr. Zahedi demonstrated the relevant experience that Plaintiff Hale lacked. She noted that Mr. Zahedi had already worked for CSN as a librarian, was "familiar with [CSN's] student population, and was able to draw on that experience." *Id*., ¶ 7. Ms.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Roberson placed emphasis on the fact that Mr. Zahedi "could talk about his library experiences at CSN," as he "had worked at the library desk and had recent reference experience," unlike Plaintiff Hale. *Id*. For these reasons, the Hiring Committee favored Mr. Zahedi as the candidate to be hired. *Id*.[8]

### F.      Plaintiff Hale Fully Clarifies His Lack of Professional Library Experience

While the Hiring Committee already had significant concerns regarding Plaintiff Hale's lack of experience based on their interview, further discussion revealed this as an even more fundamental deficiency in Plaintiff Hale's application. On March 15, 2022, Lead Librarian Christine Shore (a member of the Screening Committee) sent a message to Ms. King questioning the nature of Plaintiff Hale's practical experience working in a library. *See* Exhibit 19, March 15, 2022 Messages Between Shore and King, APEN084-89. Ms. Shore recalled that Plaintiff Hale had mentioned he "was a reference librarian at PUC," (Pacific Union College), however, in reviewing the candidates' qualifications, she realized that this experience was "not listed anywhere else on his application materials." *Id*., APEN084-85. Ms. Shore was concerned about this issue because "[o]utside of that, [Plaintiff Hale] has no experience as a librarian, just as a Library Science Instructor." *Id*.

Ms. Shore again reviewed Plaintiff Hale's application materials, and remarked there was "no listing of dates worked at PUC as a librarian (no listing of working at PUC at all)." *Id*., APEN085. Ms. Shore was "not sure how [she] overlooked this initially," but believed it was due to "the way [Plaintiff Hale] listed [CSN's] job posting qualifications and answered them theoretically, not based on actual experience." *Id*.

Ms. King, who had existing concerns about Plaintiff Hale's lack of relevant experience based on the Hiring Committee's interview, reviewed Plaintiff Hale's application materials again based on Ms. Shore's concern. *Id*., APEN086. Ms. King found it strange that Plaintiff Hale, in

---

[8] The third member of the Hiring Committee, Julian Smit, Professor of Psychology, participated as CSN's Faculty Senate Chair. *See* Exhibit 12, Declaration of Julian Smit, ¶¶ 2-4. He did not have background knowledge or experience in the field of library services. *Id.*, ¶ 6. Accordingly, he deferred to and agreed with the recommendation of Ms. King and Ms. Roberson to select Mr. Zahedi as the candidate for hire. *Id*.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

his application, "mention[ed] PUC, then talk[ed] about his doctoral research . . . [n]ot anything about helping students at PUC." *Id*. Contrary to Ms. King's previous (and mistaken) understanding, Plaintiff Hale's professional library experience appeared to be merely "an internship [he did] while doing his [undergraduate] studies." *Id*., APEN087.

Plaintiff Hale's potential lack of a basic required qualification for the eLearning Librarian position was a critical issue, which fundamentally affected the Search Committee's evaluation. Ms. Shore stated that, because of "the way [Plaintiff Hale] did his CV, [she] ended up giving him points for some preferred qualifications (and others on the screening committee did the same), but if he didn't actually work as a librarian, that wasn't correct based on the job posting." *Id*., APEN089. Ms. Shore and Ms. King also expressed concern that Human Resources would be unable to evaluate Plaintiff Hale for placement on CSN's salary schedule if he lacked experience working in a library. *Id*., APEN087-88. Both Ms. Shore and Ms. King agreed this issue was significant enough to ask Human Resources to follow up with Plaintiff Hale. *Id*., APEN088.

On March 15, 2022, CSN's Human Resources department emailed Plaintiff Hale to request details about his prior experience working in a library. *See* Exhibit 20, March 15, 2022 Correspondence Regarding Plaintiff's Work Experience, APEN090-91. Plaintiff Hale clarified that this library experience "would have been in [his] undergraduate years at Pacific Union College, which [he] attended from 1973 to 1977," and would have been for only "a year." *Id*. In sum, Ms. Shore and Ms. King's concern turned out to be true; the professional library experience they had been led to believe Plaintiff Hale possessed was, in fact, merely a brief undergraduate internship occurring nearly 50 years before he applied for the eLearning Librarian position.

### G. The Screening and Hiring Committee's Final Discussion and Unanimous Decision

On March 16, 2022, the Screening Committee and Hiring Committee met to discuss the candidates. Ms. King, Ms. Roberson, and Ms. Shore (the three most senior representatives of the CSN Libraries department serving on the Search Committee) expressed their findings and views about Plaintiff Hale's basic lack of qualifications. This caused the remaining Screening Committee members who initially favored Plaintiff Hale to reconsider their decision.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Cassandra Peay, Professor of English, stated that, upon "meeting to discuss the results of the candidates' interviews, the librarians in the search committee . . . expressed that [Plaintiff Hale]'s library knowledge was more theoretical, while [Mr. Zahedi] was more 'hands on' and technically suited to the role." *See* Exhibit 8, Declaration of Cassandra Peay, ¶ 7. Accordingly, "[a]t the end of the search committee discussions" the Search Committee was in "full agreement" that "[Mr. Zahedi] should be offered the position due to the specific experience he had in CSN's libraries." *Id*.

Geoffrey Kenmuir, English Instructor, "deferred to the knowledge of the members of the search committee who worked in the Library department," particularly in "final discussions regarding who should be selected, [where] the members of the search committee who worked in the Library department expressed a belief that that [Plaintiff Hale] did not have certain specific technical knowledge." Exhibit 9, Declaration of Geoffrey Kenmuir, ¶¶ 5-7.

Jason Green, Acquisitions Librarian, had "initially leaned slightly toward hiring [Plaintiff Hale] due to his impressive technical skills." Exhibit 7, Declaration of Jason Green, ¶¶ 7-8. However, it was discussed at the "final meeting with whole search committee" that Plaintiff Hale's experience "was high-level knowledge that may not have as much relevance to the position," causing him to ultimately recommend Mr. Zahedi for the position. *Id*.

Emily Pattni, eLearning Librarian, expressed her "belie[f] that [Mr. Zahedi] had the better experience and skills specifically suited to the eLearning Librarian position." Exhibit 6, Declaration of Emily Pattni, ¶¶ 10-11. "[A]fter the search process was completed and discussed, it was a unanimous decision by all members of the search committee to select [Mr. Zahedi] for the position." *Id*.

Ultimately, the Hiring Committee did not need to exercise its authority to overrule the Screening Committee in the event of a dispute. *See* Exhibit 4, Hiring Policy, APEN014. Following the March 16, 2022 discussion, all members of the Search Committee unanimously agreed that Mr. Zahedi was the candidate that should be hired, and Plaintiff Hale was thereafter informed he had not been selected. *See* Exhibit 21, March 16, 2022 Email Regarding Search Committee's Unanimous Decision, APEN092-94.

11

**H.     Plaintiff Hale's Retaliation Allegations Related to His Website**

In Plaintiff Hale's Amended Complaint filed August 22, 2022, he alleges that CSN retaliated against him due to his prior protected speech.  ECF No. 6, ¶¶ 77-88.  Specifically, Plaintiff Hale alleges he and his wife sued his former employer, Emporia State University, for retaliation following report of an alleged hate crime in 2015.  *Id.*, ¶ 4.  Thereafter, Plaintiff Hale maintained a website "describing his and his wife's experiences and legal battle with Emporia State."  *Id.*, ¶ 38.  Plaintiff Hale further alleges that on March 4, 2022—the same day as the Screening Committee's interview of Plaintiff Hale—a visitor from the Nevada System of Higher Education visited this website, as reflected by "Clicky tracking software."  *Id.*, ¶ 48.  Based thereon, Plaintiff Hale alleges that CSN denied his application for employment "on account of his bringing Title VII charges against ESU."  *Id.*, ¶ 52.

On March 28, 2023, CSN served Requests for Production and Interrogatories seeking documents and information supporting Plaintiff Hale's claim that a CSN employee viewed his website, and that such information affected CSN's hiring decision.  *See* Exhibit 22, CSN's Requests for Production, p. 4-5; Exhibit 23, CSN's Interrogatories, p. 7.  Plaintiff Hale's responses to CSN's discovery requests were due on May 11, 2023.  *See* Exhibit 2, Declaration of Daniel I. Aquino, ¶ 3.  As of the filing of this Motion, Plaintiff Hale still has not served responses to CSN's discovery requests.  *Id.*

Nonetheless, CSN investigated Plaintiff Hale's website-related claims based on the limited information provided in the Amended Complaint.  Ms. King, the only member of the Search Committee that possessed potentially relevant information, stated that "[w]hen the question arose regarding whether [Plaintiff Hale] had previously worked in a library as a librarian, [she] searched his name in Google," and a "website came up related to [his] prior experience with the Emporia school."  Exhibit 11, Declaration of Emily King, ¶ 13.  "As [she] began reading, it became clear this was not the school's website, but related to an issue [Plaintiff Hale] had with the school."  *Id.*  Ms. King "immediately stopped reading, as [she] did not think it was information [she] should be looking at, because it was not relevant at all to the hiring process."  *Id.*  Ms. King "never spoke about what [she] saw with the search committee," and affirmed that "[t]he content of the website

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

[she] reviewed briefly at that time had no effect on [her] opinion about the candidates, or [her] recommendations for hiring." *Id.*

While Plaintiff Hale never responded to CSN's discovery requests, he provided what he claimed to be the relevant "Clicky tracking" records at his deposition on May 19, 2023 (the Friday before discovery closed the following Monday) in response to a further request from CSN's counsel. *See* Exhibit 15, Plaintiff Hale's Deposition, at 55:25 - 57:1; *see also* Exhibit 24, Clicky Records Produced at Plaintiff's Deposition, APEN111-112. The Clicky record reflects that on "**Mar 4, 12:13p**," a visitor from "**Nevada System…**" accessed Plaintiff Hale's website, which is the visit to which the Amended Complaint refers. *See* Exhibit 15, Plaintiff Hale's Deposition, at 57:15 - 58:1; *see also* Exhibit 24, Clicky Records Produced at Plaintiff's Deposition, APEN112. The record includes no further information on the identity of the individual who accessed the website.

All eight members of the Search Committee provided sworn declarations stating that their decision to select Mr. Zahedi for hire depended solely on the candidates' qualifications, not any prior claims Plaintiff Hale may have made against his former employer, as set forth below.

Cassandra Peay stated: "I do not have knowledge of any prior lawsuits or claims [Plaintiff Hale] had filed, or any prior issues he may have had with prior employers—to my knowledge, none of these issues had any effect on the search committee's decision." Exhibit 8, Declaration of Cassandra Peay, ¶ 8.

Emily Pattni stated: "I do not have knowledge of any prior lawsuits or claims [Plaintiff Hale] had filed, or any prior issues he may have had with prior employers. Nothing like this went into my decision, and no one mentioned anything related to this during discussions we had as committee, or any other communications related to the search." Exhibit 6, Declaration of Emily Pattni, ¶ 12.

Emily King stated: "Any prior claims or issues [Plaintiff Hale] may have had with prior employers had no effect on my opinion about the candidates, or my recommendations for hiring." Exhibit 11, Declaration of Emily King, ¶ 13.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Caprice Roberson stated: "The search process for the eLearning Librarian position resulted in the hiring of Christopher Zahedi because he was the candidate most suited for the role. The candidates' skills, qualifications, and experience were the only factors considered."  Exhibit 10, Declaration of Caprice Roberson, ¶ 13.

Geoffrey Kenmuir stated: "I do not have knowledge of any prior lawsuits or claims [Plaintiff Hale] filed, or any prior issues he may have had with prior employers. This never came up in any committee discussions, and nothing like this affected my opinions on the candidates." Exhibit 9, Declaration of Geoffrey Kenmuir, ¶ 8.

Christine Shore stated: "The existence of any prior claims or issues [Plaintiff Hale] had with his prior employers did not influence my decision or evaluation of the candidates in any way."  Exhibit 5, Declaration of Christine Shore, ¶ 8.

Jason Green stated: "I do not have knowledge of any prior lawsuits or claims [Plaintiff Hale] filed, or any prior issues he may have had with prior employers. Nothing like this went into my decision, and no one mentioned anything related to this during search discussions."  Exhibit 7, Declaration of Jason Green, ¶ 9.

Julian Smit, who served on over 50 Search Committees in 2022 due to his position as CSN's Faculty Senate Chair (and thus lacked specific recollection of this matter), stated: "I do not recall any discussion or consideration by the Search Committee of any issues Melvin Hale may have had with his prior employers, or any lawsuits that he was involved in."   Exhibit 12, Declaration of Julian Smit, ¶¶ 4, 5, 7.  Mr. Smit further noted that discussion of a candidate's prior lawsuit would have been such a rare event that he is "certain [he] would remember this occurring," if it had, in fact, occurred.  *Id*.

## I.     **Plaintiff Hale's Discrimination Allegations Regarding Caprice Roberson**

Plaintiff Hale further alleges that CSN did not hire him due to his race (black).  *See* ECF No. 6, ¶ 91 ("By refusing to hire Plaintiff, NSHE intentionally punished him for being black.") Plaintiff Hale testified that the sole basis for his racial discrimination claim is his belief that one of the Search Committee members, Ms. Roberson, engaged him in what he "felt was a hostile manner" during his interview.  *See* Exhibit 15, Plaintiff Hale's Deposition, at 36:10-13.  When

asked to describe specifically what Ms. Roberson did or said that he believed to be hostile, Plaintiff Hale stated he could not be more specific than "[j]ust her tone, her attitude, and her body language." *Id*., at 36:14-24.  Plaintiff Hale's only support for his claim was that, during the video interview, Ms. Roberson's face was closer to the camera than other interviewers, and that he perceived her "facial expressions" to be "negative."  *Id.*, at 37:5-24 ("With Ms. Roberson, all I could see on the monitor the entire time was just her face like this"); 38:5-16 (describing Ms. Roberson's expression only as "negative").  Ms. Roberson's perceived attitude was the *only* aspect of the interview process that made Plaintiff Hale believe his race was being considered.  *Id.*, at 46:9-13 (When asked, "[a]side from Ms. Roberson's hostile demeanor, did anything else happen in the interview process that specifically made you think that your race was being considered?", Plaintiff Hale answered: "No.").

Ms. Roberson vehemently denies that Plaintiff Hale's race affected her hiring recommendation.  Exhibit 10, Declaration of Caprice Roberson, ¶ 12.  Ms. Roberson, who is also black, stated it was "very important for [her] to hire diversity" as a leader.[9]  *Id*.  Ms. Roberson stated she is not only "passionate and knowledgeable about hiring diverse candidates," but has "done presentations on how to hire more diverse candidates," and in her leadership role "[has] always made this a focus, including ensuring job descriptions show that we do things collaboratively and in a team-based environment, ensuring we reach out to local groups for people of color in libraries, and valuing skills more than years of experience in the hiring process, recognizing that people of color may have increased barriers to obtaining such skills."  *Id*.

In simple terms, Ms. Roberson stated: "The search process for the eLearning Librarian position resulted in the hiring of Christopher Zahedi because he was the candidate most suited for the role . . . [Plaintiff Hale]'s race had no effect on our decision not to hire him."  *Id*.

---

[9] The idea that Ms. Roberson (a black woman and the highest-ranking member of the Search Committee with ultimate hiring authority) would have discriminated against a black applicant, or allowed such discrimination to occur, is weak at best.  *See, e.g.*, *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096-97 (9th Cir. 2005) (when the decision maker and the alleged victim belong to the same protected class, evidence of discrimination is, at best, weak).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

### III.    LEGAL STANDARD

A motion for summary judgment is appropriate and should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should not be viewed as "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole. . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Defendant, as the moving party, has the initial burden to show the absence of a genuine issue of fact concerning the grounds raised in the motion for summary judgment. *Celotex Corp.*, 477 U.S. at 325.  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the non-moving party's claim or defense or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once defendant satisfies its burden under Rule 56, the burden shifts to plaintiff who "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  Plaintiff Hale must show that there is a genuine dispute of material fact, which is a fact that "might affect the outcome of the suit under the governing law." *Smith v. Pac. Bell Tel. Co*., 662 F. Supp. 2d 1199, 1215 (E.D. Cal. 2009) (*citing Anderson*, 477 U.S. at 248).

When evaluating a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *See, e.g.*, *Kaiser Cement Corp. v. Fishbach & Moore, Inc*., 793 F.2d 1100, 1103 (9th Cir. 1986).  Nevertheless, the non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc*., 929 F.2d 1404, 1409 (9th Cir. 1991) and, importantly, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am*., 285 F.3d 764, 783 (9th Cir. 2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Here, Plaintiff Hale cannot overcome the legal and factual infirmities of his claims.

## IV.   LEGAL ARGUMENT

### A.   Plaintiff Hale's Retaliation Claim Fails Because He Cannot Demonstrate That His Protected Activity Had a Determinative Role (Or Any Role) in CSN's Hiring Decision

To establish a prima facie claim of retaliation, Plaintiff Hale must show that (1) he engaged in protected speech; (2) CSN took an "adverse employment action" against him; and (3) the speech was a "substantial or motivating factor for the adverse employment action." *Thomas v. City of Beaverton,* 379 F.3d 802, 808 (9th Cir. 2004).  "But-for" causation is required to prove retaliation, meaning Plaintiff Hale must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533 (2013).

Put simply, to prove the causation prong of his retaliation claim, Plaintiff Hale must prove that his prior discrimination claim against Emporia State University was used as a substantial or motivating factor by CSN in evaluating his application for employment, and that he would have been hired if not for the unlawful consideration of his prior discrimination claim.  As set forth below, Plaintiff Hale has no evidence to support either of these factual issues, warranting summary judgment in CSN's favor on the retaliation claim.[10]

### 1.   Plaintiff Hale Has No Evidence Demonstrating That CSN Used His Prior Discrimination Lawsuit As A Substantial Or Motivating Factor In Evaluating His Application For Employment.

CSN has produced all communications and documents related to the Search Committee's evaluation of Plaintiff Hale and Mr. Zahedi.  Plaintiff Hale cannot point to any evidence that his prior lawsuit was mentioned in the Search Committee's discussions, nor that any member of the Search Committee used the prior lawsuit as a substantial or motivating factor in their decision.

While Plaintiff Hale claims that a visitor from the Nevada System of Higher Education visited his website (which allegedly described his prior claim against Emporia State University),

---

[10] For purposes of this Motion, CSN does not address whether Plaintiff Hale's prior lawsuit constitutes protected speech, nor whether CSN's hiring decision was an adverse action. Nonetheless, CSN is entitled to summary judgment based on Plaintiff Hale's inability to prove the causation element of his retaliation claim.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

the identity of the visitor is unknown.  Plaintiff Hale cannot establish that this alleged visit to his website had any bearing on the Search Committee's decision.

Indeed, there are only two items of evidence relevant to Plaintiff Hale's website-related claims.  The first is Ms. King's statement regarding her brief visit to what may have been Plaintiff Hale's website, which she came across while searching Plaintiff Hale's name in Google to determine "whether [Plaintiff Hale] had previously worked in a library as a librarian."  Exhibit 11, Declaration of Emily King, ¶ 13.  However, she immediately left the website once "it became clear this was not the school's website, but related to an issue [Plaintiff Hale] had with the school." *Id*.  Ms. King "never spoke about what [she] saw with the search committee," and affirmed that "[t]he content of the website [she] reviewed briefly at that time had no effect on [her] opinion about the candidates, or [her] recommendations for hiring."  *Id*.

The second relevant item of evidence is the Clicky record Plaintiff Hale produced at his deposition immediately prior to the close of discovery, which provides no further context for who might have visited Plaintiff Hale's website.  Exhibit 24, Clicky Records Produced at Plaintiff's Deposition, APEN112.

Plaintiff Hale testified that his retaliation claim was based on his belief that Ms. Roberson, as a CSN administrator, was "in communication with [] Emporia State."  *See* Exhibit 15, Plaintiff Hale's Deposition, at 42:14-21.  However, Plaintiff Hale admitted that he had no evidence that Ms. Roberson was in communication with Emporia State University.  *Id*.  (When asked, "Do you have any evidence that Ms. Roberson was in communication with Emporia?", Plaintiff Hale responded: "No.").

In sum, no evidence exists supporting Plaintiff Hale's speculation that a visit to his website caused CSN not to hire him.  Most importantly, all eight members of the Search Committee stated in sworn and uncontroverted declarations that their decisions were based solely on the candidates' qualifications, not any prior claims Plaintiff Hale may have had with his former employer.  *See* Exhibits 5-12, Search Committee Declarations.

Plaintiff Hale's speculation that retaliation occurred is insufficient; he must "produce specific evidence, through affidavits or admissible discovery material" to dispute CSN's

entitlement to summary judgment.  *Bhan*, 929 F.2d at 1409.  Plaintiff Hale has no evidence to support a factual finding that his prior discrimination lawsuit was a substantial or motivating factor in CSN's decision not to hire him.  This is fatal to Plaintiff Hale's retaliation claim, warranting summary judgment in CSN's favor.

        **2.**        **Application of the "But-For" Causation Standard Further Precludes Plaintiff Hale's Retaliation Claim.**

Even if Plaintiff Hale could present evidence suggesting that his protected activity was a substantial or motivating factor in the Search Committee's decision (which he cannot), he would still be unable to establish the necessary "but-for" causation.  *See Univ. of Texas*, 570 U.S. at 360, 133 S. Ct. at 2533.  Plaintiff Hale cannot show that he would have been hired "but-for" unlawful retaliation because Mr. Zahedi was plainly the more qualified candidate with respect to the basic requirement for the position: prior experience working in a library.

The job description for the eLearning Librarian position contained only two "Required Qualifications": (1) "A master's degree in library science from an ALA accredited program," and (2) "**Experience working in a library setting.**"  *See* Exhibit 3, Position Summary, APEN008. (emphasis added).  The Hiring Committee appropriately gave this factor determinative weight in making its decision, given that it was one of two required qualifications for the position.

Mr. Zahedi possessed over **15 years** of continuous experience working professionally in libraries, immediately preceding his application for the eLearning Librarian position.  *See* Exhibit 13, Christopher Zahedi's Resume, APEN038.  This included six months, immediately preceding his application, working for CSN Libraries with the exact student population the eLearning Librarian position would require servicing.  *Id*.

Plaintiff Hale, conversely, had **no** prior experience working professionally in a library. His single-year undergraduate internship in a library did not constitute professional experience in a library, and occurred nearly 50 years prior to his application for the eLearning Librarian position. The one year and ten months Plaintiff Hale had worked as an Assistant Professor at ESU's School of Library and Information Management did not constitute working for a library at all, and occurred nearly six years prior to his application for the eLearning Librarian position.  (In the six

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

years leading up to Plaintiff Hale's application for the eLearning Librarian position, he worked for an art gallery, completely unrelated to the library services field.)

Even if all of Plaintiff Hale's "library-related" experience were considered, Mr. Zahedi still had over **five times** more experience than Plaintiff Hale working for a library. Indeed, Mr. Zahedi's prior six months working for CSN (as a librarian, with the exact student population the eLearning Librarian position would require servicing) was alone sufficient to render him more qualified for the position than Plaintiff Hale.

The drastic difference in professional library experience between Plaintiff Hale and Mr. Zahedi was ultimately the determining factor in the Hiring Committee's decision. *See* Exhibit 11, Declaration of Emily King, ¶ 9 (Mr. Zahedi's plain practice experience, and Plaintiff Hale's lack thereof, "alone was sufficient to make the decision that [Mr. Zahedi] was the better candidate," as he had "the exact experience [CSN] needed in the eLearning Librarian role."); Exhibit 10, Declaration of Caprice Roberson, ¶ 8 (Plaintiff Hale's "library school" experience reflected a lack of "experience in practical librarian role," and while he "taught other students how to be librarians, [] he himself did not display the experience working at reference desk or helping students troubleshoot their issues in the library."). As Ms. Roberson stated, "[t]here is a big difference between teaching concepts to librarian students and helping the general student population, as a librarian." *Id*.

Plaintiff Hale does not dispute the factual basis for Ms. Roberson's opinion. During his deposition, he was asked whether he disagreed with Mr. Roberson's statements that he lacked recent practice library experience, and that his experience was more focused on teaching people how to be librarians rather than serving in an actual librarian role—he answered "no" to both questions. *See* Exhibit 15, Plaintiff Hale's Deposition, at 44:22 - 45:5.

After interviews were completed, the Search Committee became aware that Plaintiff Hale lacked the minimum required qualification of professional library experience. *See* Exhibit 19, March 15, 2022 Messages Between Shore and King, APEN084-89. This was not caught sooner, in large part, because of Plaintiff Hale's ambiguous statements regarding his experience in his application. *Id*., APEN085 (Ms. Shore was "not sure how [she] overlooked this initially," but

believed it was due to "the way [Plaintiff Hale] listed [CSN's] job posting qualifications and answered them theoretically, not based on actual experience."); *see also* Exhibit 16, Plaintiff Hale's Written Responses to eLearning Librarian Job Requirements, APEN072-78.   Thus, Plaintiff Hale did not possess a basic required qualification for the eLearning Librarian position: experience working in a library setting.

Mr. Zahedi was not merely the *more* qualified candidate, he was the *only* qualified candidate.  Because selection of Mr. Zahedi was CSN's only reasonable choice, Plaintiff Hale cannot establish that he would have been hired "but-for" for any alleged retaliatory motives (even if evidence of such motives existed).  CSN is thus entitled to summary judgment on Plaintiff Hale's retaliation claim.

### B.     Plaintiff Hale's Race Discrimination Claim Fails Because He Cannot Demonstrate That He Was Qualified For the Position, Nor That He Was More Qualified Than Mr. Zahedi

To prevail on his race discrimination claim, Plaintiff Hale must prove that "he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which [CSN] was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that after his rejection, the position remained open and [CSN] continued to seek applicants from persons of [his] qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).

If (and only if) the plaintiff establishes a prima facie claim, a rebuttable presumption shifts the burden of production to the employer to articulate some legitimate, non-discriminatory reason for its decision.  *Id.*  The burden then shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507-08, 113 S. Ct. 2742 (1993).  To show pretext, the plaintiff must do more than restate the prima facie case—he "must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." *Lindahl v. Air France,* 930 F.2d 1434, 1438 (9th Cir. 1991).

Plaintiff Hale's discrimination claim fails because he cannot demonstrate that he was qualified for the eLearning Librarian position, nor can he demonstrate that CSN subsequently

sought applicants with his qualifications (i.e., that CSN hired an equally or less qualified candidate). As set forth above, "experience working in a library setting" was one of only two "Required Qualifications" for the eLearning Librarian position. *See* Exhibit 3, Position Summary, APEN008. Plaintiff Hale had no prior experience working professionally in a library. His single-year undergraduate internship in a library—nearly 50 years prior to his application for the eLearning Librarian position—did not constitute professional experience in a library, and his less than two years of working as an Assistant Professor ESU's School of Library and Information Management did not constitute experience working in a library at all. Plaintiff Hale did not meet the basic requirements for the position, and thus was not qualified. This precludes Plaintiff Hale from establishing a prima facie claim of discrimination, warranting summary judgment in CSN's favor.

Even if Plaintiff Hale could establish he met the minimum qualifications for the position, he cannot demonstrate that CSN hired an equally or less qualified candidate. As set forth above, Mr. Zahedi possessed over **15 years** of experience working professionally in libraries. *See* Exhibit 13, Christopher Zahedi's Resume, APEN038. This included six months, immediately preceding his application, working in the CSN Libraries department with the exact student population the eLearning Librarian position would require servicing. *Id.* Mr. Zahedi was overwhelmingly more qualified for the requirements of eLearning Librarian position, and his responses during the Hiring Committee's interview demonstrated his practical experience. This, likewise, entitles CSN to summary judgment on Plaintiff Hale's discrimination claim.

Fundamentally, Plaintiff Hale has no evidence sufficient to maintain his discrimination claim. There is no evidence suggesting that Plaintiff Hale's race played a role in CSN's hiring decision. All eight members of the Search Committee stated explicitly in their sworn and uncontroverted declarations that their decisions depended solely on the candidates' qualifications, which is consistent with the basic evidence regarding those qualifications. *See* Exhibits 5-12, Search Committee Declarations.

1    Further, Plaintiff Hale's deposition testimony reflects that his claim is based on mere

2 speculation. When asked to provide his basis for believing that CSN denied his application on the

3 basis of his race, Plaintiff Hale stated:

4           They had every opportunity to hire a black male into a profession
            that is predominantly white female and which, supposedly, has put
5           forth major efforts to increase the hiring of black males into the
            profession, and had a clear opportunity to do so. CSN chose not to.
6           That, to me, proves intentionality.

7    *See* Exhibit 15, Plaintiff Hale's Deposition, at 64:21 - 65:3. Plaintiff Hale had no further facts to

8 support his discrimination claim. *Id.*, at 65:4-8.

9    Put simply, Plaintiff Hale's discrimination claim is based on his belief that CSN was

10 required to hire him *because* he was black. Plaintiff Hale's belief is unsupported by law or fact.

11 CSN was entitled and required to hire the more qualified candidate, without regard to race. CSN

12 did so, hiring the candidate who was far more qualified based on the most critical requirement of

13 the position: experience working in a library. CSN is thus entitled to summary judgment on

14 Plaintiff Hale's discrimination claim.

15 **V.    CONCLUSION**

16    For all of the foregoing reasons, CSN respectfully requests that this Court grant judgment

17 in its favor and against Plaintiff Hale on all the claims asserted in the Amended Complaint.

18    Dated: July 5th, 2023.

19                                    McDONALD CARANO LLP

20
                                     By: */s/ Daniel I. Aquino*
21                                       Kristen T. Gallagher (NSBN 9561)
                                         Daniel I. Aquino (NSBN 12682)
22                                       Tara U. Teegarden (NSBN 15344)
                                         2300 West Sahara Avenue, Suite 1200
23                                       Las Vegas, Nevada 89102

24                                       *Attorneys for Defendant*
                                         *College of Southern Nevada*
25

26

27

28

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I certify that I am an employee of McDonald Carano LLP, and that on the 5th day of July,

3

2023, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY**

4

**JUDGMENT** was electronically filed with the Clerk of the Court by using CM/ECF service which

5

will provide copies to all counsel of record registered to receive CM/ECF notification:

6

Scott L. Rogers, Esq.
Mitchell Rogers Injury Law

7

2020 W. Sunset Road
Henderson, NV  89014

8

scott@mitchellrogersinjurylaw.com

9

**<u>Via E-mail</u>**

10

Brett M. Rubin, Esq.
The Law Office of Brett M. Rubin

11

17342 Tiara Street
Encino, CA  91316

12

brubin@clarksonriley.com

13

*Attorneys for Plaintiff*

14

15

16

   /s/   *Marianne Carter*

17

An employee of McDonald Carano LLP

18

19

20

21

22

23

24

25

26

27

28

McDONALD ﴾﴿ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966