UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Melvin Hale,<br><br>            Plaintiff<br><br>    v.<br><br>State of Nevada ex rel. Board of Regents for the Nevada System of Higher Education,<br><br>            Defendant | Case No. 2:22-cv-01321-CDS-EJY<br><br>**Order Granting Defendant's Motion for Summary Judgment and Closing Case**<br><br>[ECF No. 29] |

Defendant State of Nevada ex rel. Board of Regents for the Nevada System of Higher Education on behalf of the College of Southern Nevada's ("CSN") moves for summary judgment on plaintiff Melvin Hale's retaliation and race discrimination claims against CSN for failure to hire Hale for CSN's eLearning Librarian position. ECF No. 29. The motion is fully briefed. ECF Nos. 31; 35. For the reasons set forth herein, CSN's motion for summary judgment is granted. The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

I.      Background

    A.  The Screening and Hiring Committee's decision to hire Mr. Zahedi

In January 2022, CSN published a job opening for an eLearning Librarian position at its North Las Vegas Campus Library. Position Summary, Def.'s Ex. 3, ECF No. 30-3; Decl. of Bill Dial, Def.'s Ex. 1, ECF No. 30-1 at ¶ 5. The eLearning Librarian position listed two "Required Qualifications:" (1) "A master's degree in library science from an ALA accredited program[,]" and (2) "Experience working in a library setting." Position Summary, Def.'s Ex. 3, ECF No. 30-3 at 3.

As required by CSN's Hiring Policy, the college appointed a Screening Committee, composed of faculty members, to screen and evaluate candidates for the eLearning Librarian position. Hiring Policy, Def.'s Ex. 4, ECF No. 30-4. The Screening Committee screened

candidates for minimum qualifications, conducted initial interviews with the most qualified candidates, and forwarded the names of the most qualified candidates to a second committee, known as the "Hiring Committee." *Id*. The Hiring Committee conducts final interviews and makes the final hiring decision. *Id*. In the event of any disagreement, the highest-ranking member of the Hiring Committee (the Vice President of Academic Affairs) was authorized to make the final decision on hiring. *Id*. As relevant here, the Screening Committee consisted of the following five faculty members: (1) Christine Shore,[1] Lead Librarian; (2) Emily Pattni,[2] eLearning Librarian; (3) Jason Green,[3] Acquisitions Librarian; (4) Cassandra Peay,[4] Professor of English; and (5) Geoffrey Kenmuir,[5] English Instructor. The Hiring Committee consisted of the following three faculty members: (1) Caprice Roberson,[6] Interim Associate Vice President for Academic Affairs; (2) Emily King,[7] Interim Director for CSN Libraries; and (3) Julian Smit,[8] Professor of Psychology.

The Screening Committee selected Christopher Zahedi and plaintiff Hale as the candidates for the Hiring Committee to interview, recommending Hale as its first choice for hire. March 4, 2022 Screening Committee Recommendation Email, Def.'s Ex. 18, ECF No. 30-18. At the time of applying for the eLearning Librarian position, Mr. Zahedi had approximately 15 years of experience working in a library setting, including working as a CSN adjunct librarian for the preceding six months. Christopher Zahedi's Resume, Def.'s Ex. 13, ECF No. 30-13. From June 2016 to the time of his application for the eLearning Librarian position, Hale had worked as a consultant at an art gallery. Hale's Resume, Def.'s Ex. 14, ECF No. 30-14 at 2. From July 2014 to

---

[1] Decl. of Christine Shore, Def.'s Ex. 5, ECF No. 30-5.
[2] Decl. of Emily Pattni, Def.'s Ex. 6, ECF No. 30-6.
[3] Decl. of Jason Green, Def.'s Ex. 7, ECF No. 30-7.
[4] Decl. of Cassandra Peay, Def.'s Ex. 8, ECF No. 30-8.
[5] Decl. of Geoffrey Kenmuir, Def.'s Ex. 9, ECF No. 30-9.
[6] Decl. of Caprice Roberson, Def.'s Ex. 10, ECF No. 30-10.
[7] Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11.
[8] Decl. of Julian Smit, Def.'s Ex. 12, ECF No. 30-12.

May 2016, Hale worked as an Assistant Professor of Archives Studies at Emporia State University in Kansas, where he taught courses in the School of Library and Information Management. *Id*. This was not an experience working in a library setting; when asked to describe his experience relevant to the eLearning Librarian position's requirement of "experience working in a library setting[,]" Hale did not identify working as an assistant professor. *See* Hale's Dep., Def.'s Ex. 15, ECF No. 30-15 at 4–5. He instead answered that he "worked in a library setting for a year as a reference librarian in college" in the mid-1970s, and aside from that internship, he had no other experience working in a library setting. *Id*. at 5. Hale did not include that internship experience on his resume. *See* Hale's Resume, Def.'s Ex. 14, ECF No. 30-14. And when asked whether he satisfied the requirement of "Experience working in a library setting," in the application, Hale answered, "YES[,]" without further explanation. Hale's Written Responses to eLearning Librarian Job Requirements, Def.'s Ex. 16 at ECF No. 30-16 at 7. Hale's other work experience included working as a network engineer, a marketing director, a product manager, and an art gallery owner—entirely unrelated to the library services industry. Hale's Resume, Def.'s Ex. 14, ECF No. 30-14.

The Hiring Committee conducted separate video interviews with Hale and Mr. Zahedi. First Am. Compl. (FAC), ECF No. 6 at ¶ 23. Ms. King "noted concerns relating to [Hale's] fundamental understanding of how the eLearning Librarian would serve the library." Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 6. Ms. King believed that Hale's approach "was a significant difference in pedagogical approach to what w[as] needed at CSN" because "[his] instructional approach was to get students up to speed where he was." *Id*. at ¶ 8. Ms. King believed this was based on Hale's "background [] as a professor teaching library students studying to become librarians (as opposed to assisting a general population of students)." *Id*. Ms. Roberson noted that the members of the Screening Committee had only "generally evaluated and screened candidates for possession of basic technical ability," while the Hiring Committee "was closely focused on evaluating which of the finalists would be better suited specifically for

the eLearning Librarian position." Decl. of Caprice Roberson, Def.'s Ex. 10, ECF No. 30-10 at ¶ 6. Ms. Roberson observed that Hale "went to library school, and went on to a teaching role at that library school[,]" but lacked "experience in [a] practical librarian role." *Id*. at ¶ 8. Conversely, both Ms. King and Ms. Roberson found that Mr. Zahedi had the experience Hale lacked, especially since he had already worked as a CSN librarian. *Id*. at ¶ 7; Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 9. Mr. Zahedi was familiar with the student population, had worked at the CSN library desk, was able to draw on examples of working with CSN's student population, had librarian experience in both public and academic settings, and demonstrated an approach that aligned with CSN's preferences. *See id*.; *see also* Decl. of Caprice Roberson, Def.'s Ex. 10, ECF No. 30-10 at ¶ 7.

On March 15, 2022, lead librarian and Screening Committee member Christine Shore sent a message to Ms. King questioning the nature of Hale's practical experience working in a library. March 15, 2022 Messages Between Shore and King, Def.'s Ex. 19, ECF No. 30-19. Ms. Shore noted that she recalled Hale mentioning that he was a reference librarian at Pacific Union College, but when reviewing his qualifications, she realized that this experience was "not listed anywhere else on his application materials." *Id*. at 2–3. And outside of the experience at Pacific Union College, Hale had "no experience as a librarian, just as a Library Science Instructor." *Id*. at 3. After again reviewing Hale's application materials, Ms. Shore was "not sure how [she] overlooked this initially," but believed it was due to "the way [Hale] listed [CSN's] job posting qualifications and answered them theoretically, not based on actual experience." *Id*. Ms. King noted that it appeared that the Pacific Union experience was actually an internship. *Id*. at 5. Ms. Shore further noted that because of "[t]he way [Hale] did his CV, [she] ended up giving him points for some preferred qualifications (and others on the screening committee did the same) but if he didn't actually work as a librarian, that wasn't correct based on the job posting." *Id*. at 7. Ms. Shore and Ms. King agreed this issue was significant enough to ask Human Resources to follow up with Hale. *Id*. at 6.

That day, Human Resources emailed Hale to request details about his prior experience working in a library. March 15, 2022 Correspondence Regarding Plaintiff's Work Experience, Def.'s Ex. 20, ECF No. 30-20. Hale confirmed that the library experience at Pacific Union College occurred while he was a student at Pacific Union College, and lasted one year, sometime between 1973 to 1977. *Id.* at 3.

The Screening Committee and Hiring Committee met to discuss candidates; the Screening Committee was in "full agreement" that "[Mr. Zahedi] should be offered the position due to the specific experience he had in CSN's libraries." Decl. of Cassandra Peay, Def.'s Ex. 8, ECF No. 30-8 at ¶ 7; *see also* March 16, 2022 Email Regarding Search Committee's Unanimous Decision, Def.'s Ex. 21, ECF No. 30-21.

**B. Hale files the instant action**

In the FAC, Hale alleges that CSN retaliated against him due to protected speech, namely the lawsuit he filed against his former employer, Emporia State University, for retaliation following a report of an alleged hate crime. FAC, ECF No. 6 at ¶¶ 77–88. Hale maintains a website "describing his and his wife's experiences and legal battle with Emporia State." *Id.* at ¶ 38. Hale alleges that on the day he was interviewed by the Screening Committee, a visitor from the Nevada System of Higher Education visited this website, as reflected by "Clicky tracking software." *Id.* at ¶ 48. Hale alleges that CSN did not hire him for the eLearning Librarian position "on account of his bringing Title VII charges against ESU." *Id.* at ¶ 52.

Hale also alleges that CSN did not hire him because Ms. Roberson discriminated against him because of his race. *Id.* at ¶ 91 ("By refusing to hire Plaintiff, NSHE intentionally punished him for being [B]lack."). Hale argues that Ms. Roberson engaged with him in a manner that he "felt was [] hostile" based on "her tone, her attitude, and her body language" during his interview. *See* Hale's Dep., Def.'s Ex. 15, ECF No. 30-15 at 5. Ms. Roberson, who is also Black, denies that Hale's race affected her hiring recommendation. Decl. of Caprice Roberson, Def.'s Ex. 10, ECF No. 30-10 at ¶ 12. Ms. Roberson stated: "The search process for the eLearning Librarian

5

position resulted in the hiring of Christopher Zahedi because he was the candidate most suited for the role . . . [Hale]'s race had no effect on our decision not to hire him." *Id.* at ¶ 13.

## II. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## III. Discussion

CSN moves for summary judgment on Hale's retaliation claim, arguing that Hale could not demonstrate that his protected activity had any role in CSN's hiring decision. ECF No. 29 at 17. CSN also moves for summary judgement on Hale's race discrimination claim, arguing that Hale fails to demonstrate that he was qualified for the position and also fails to demonstrate he was more qualified than Mr. Zahedi. *Id.* at 21. For the following reasons, I grant summary judgment on both claims.

### A. Hale failed to establish a prima facie claim of retaliation.

To establish a prima facie case for retaliation, a plaintiff must offer proof that: (1) they were engaged in protected activity; (2) defendant took an adverse employment action against the plaintiff; and (3) a causal connection existed between plaintiff's protected activity and defendant's adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

Here, Hale alleges that, although he possessed the qualifications to be hired as the eLearning Librarian, CSN declined to hire him for the position because of his lawsuit against his former employer, Emporia State University, which he claims is a protected activity.[9] ECF No. 31 at 10–11. Hale argues that because the Screening Committee initially recommended him, the decision not to hire him is a result of retaliation, because it was made after Ms. King became aware of the lawsuit. *Id.* at 11. While not being hired may constitute an adverse employment action, Hale provides no evidence to show that there is a casual connection between his lawsuit against Emporia State and CSN's decision not to hire him for the eLearning Librarian position, and the evidence shows the opposite.

First, there is no evidence to support Hale's claim that CSN "simply invented the requirement that the eLearning Librarian had to have *recent*, *substantial* and *professional* reference library experience." *See id.* at 10–11. As discussed, the requirements for the eLearning Librarian position always included a master's degree in library science and experience working in a library setting. Position Summary, Def.'s Ex. 3, ECF No. 30-3 at 3.

Second, although Hale testified that his retaliation claim was based on his belief that Ms. Roberson was "in communication with [] Emporia State," Hale admitted that he had no evidence that this occurred. *See* Hale's Dep., Def.'s Ex. 15, ECF No. 30-15 at 8 (When asked, "Do you have any evidence that Ms. Roberson was in communication with Emporia?", Hale responded: "No."). *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (at

---

[9] The court does not decide at this time whether Hale's prior lawsuit is a protected activity.

summary judgment, a court need not draw all possible inferences in plaintiff's favor, but only all reasonable ones, and a reasonable inference is one based on more than mere speculation, conjecture, or fantasy); *Rivera v. AMTRAK.*, 331 F.3d 1074, 1078 (9th Cir. 2003) (plaintiff's mere speculation presented as conclusory allegations, which is unsupported by factual data, cannot defeat summary judgment); *see also Falls Riverway Realty v. Inc. v. Niagra Falls*, 754 F.2d 49 (2nd Cir. 1985) (conclusory testimony insufficient support for summary judgment).

And while there is evidence that a user from "Nevada System…" accessed Hale's website, it provides no context for who this user might have been. Clicky Records, Def.'s Ex. 24, ECF No. 30-24 at 3. It appears that the user may have been Ms. King, as she visited Hale's website during a Google search of Hale's name to determine "whether [Hale] had previously worked in a library as a librarian[.]" Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 13. However, Ms. King immediately left the website once "it became clear this was not the school's website, but related to an issue [Hale] had with the school." *Id.* Ms. King "never spoke about what [she] saw with the search committee[,]" and stated that "[t]he content of the website [she] reviewed briefly at that time had no effect on [her] opinion about the candidates, or [her] recommendations for hiring." *Id.* And while Hale implies that Ms. King raised the question of Hale's library experience *because* she became aware of his lawsuit (ECF No. 31 at 10), that implication is contradicted by Ms. King's testimony. According to King, she only came across Hale's website, and learned of the lawsuit, because she conducted a Google search of his name to determine whether Hale had library work experience. Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 13.

Furthermore, all eight members of the Screening Committee provided sworn declarations stating that their decision to select Mr. Zahedi for hire depended solely on the candidates' qualifications—not Hale's lawsuit against Emporia State.[10] And while Ms.

---

[10] Decl. of Cassandra Peay, Def.'s Ex. 8, ECF No. 30-8 at ¶ 8 ("I do not have knowledge of any prior lawsuits or claims [Hale] had filed, or any prior issues he may have had with prior employers—to my knowledge, none of these issues had any effect on the search committee's decision."); Decl. of Emily Pattni, Def.'s Ex. 6, ECF No. 30-6 at ¶ 12 ("I do not have knowledge of any prior lawsuits or claims [Hale] had filed, or any prior issues he may have had with prior employers. Nothing like this went into my decision, and no one mentioned anything related to this during discussions we had as committee, or any

Roberson, as the highest-ranking administrator on the committee, had "final say" on the hiring decision if it was needed, the decision to hire Mr. Zahedi was unanimous. Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 12. Thus, there is no evidence that Ms. King's knowledge of the lawsuit had any bearing on her decision, or that any other members knew of the lawsuit, and if they did, that it impacted their decision not to hire Hale. For that reason, I grant CSN's motion for summary judgment on Hale's retaliation claim.

### B. Hale failed to establish a prima facie claim of race discrimination.

To establish a prima facie race discrimination claim, a plaintiff must offer proof that: (1) he belongs to a protected class; (2) he applied and were qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, the plaintiff was rejected; and (4) that, after the rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993), *amended on denial of reh'g* (Jan. 26, 1994).

Hale does not oppose CSN's motion on this claim. ECF No. 31 at 2 n.1. District courts may grant an unopposed motion for summary judgment if the movant's papers sufficiently support the motion and do not present on their face a genuine issue of material fact. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). The failure to oppose a motion for summary

---

other communications related to the search."); Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 13 ("Any prior claims or issues [Hale] may have had with prior employers had no effect on my opinion about the candidates, or my recommendations for hiring."); Decl. of Caprice Roberson, Def.'s Ex. 10, ECF No. 30-10 at ¶ 13 ("The search for the eLearning Librarian position resulted in the hiring of Christopher Zahedi because he was the candidate most suited for the role. The candidates' skills, qualifications, and experience were the only factors considered."); Exhibit 9, Decl. of Geoffrey Kenmuir, Def.'s Ex. 9, ECF No. 30-9 at ¶ 8 ("I do not have knowledge of any prior lawsuits or claims [Hale] filed, or any prior issues he may have had with prior employers. This never came up in any committee discussions, and nothing like this affected my opinions on the candidates."); Decl. of Christine Shore, Def.'s Ex. 5, ECF No. 30-5 at ¶ 8 ("The existence of any prior claims or issues [Hale] had with his prior employers did not influence my decision or evaluation of the candidates in any way."); Decl. of Jason Green, Def.'s Ex. 7, ECF No. 30-7 at ¶ 9 ("I do not have knowledge of any prior lawsuits or claims [Hale] filed, or any prior issues he may have had with prior employers. Nothing like this went into my decision, and no one mentioned anything related to this during search discussions."); Decl. of Julian Smit, Def.'s Ex. 12, ECF No. 30-12 at ¶¶ 4–5, 7 ("I do not recall any discussion or consideration by the Search Committee of any issues Melvin Hale may have had with his prior employers, or any lawsuits that he was involved in.").

judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). As Federal Rule of Civil Procedure 56(e) explains, "[i]f a party fails . . . to properly address another party's assertion of fact[,] . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3); *Heinemann*, 731 F.3d at 917.

Here, CSN is entitled to summary judgment on Hale's race discrimination claim because Hale was not qualified for the eLearning Librarian position. There were two requirements for the position: (1) a master's degree in library science from an ALA accredited program, and (2) experience working in a library setting. Position Summary, Def.'s Ex. 3, ECF No. 30-3 at 3. The evidence demonstrates that Hale did not have qualifying experience working in a library setting. March 15, 2022 Messages Between Shore and King, Def.'s Ex. 19, ECF No. 30-19. Once Hale's lack of library work experience became known, Human Resources asked Hale to confirm whether he had library work experience. *Id* at 3; *see also* March 15, 2022 Correspondence Regarding Plaintiff's Work Experience, Def.'s Ex. 20, ECF No. 30-20. Hale confirmed that his library experience was entirely composed of an undergraduate internship at Pacific Union College's library. March 15, 2022 Correspondence Regarding Plaintiff's Work Experience, Def.'s Ex. 20, ECF No. 30-20.

While that alone is enough, conversely, the evidence also shows that the hired candidate, Mr. Zahedi, *did* have practical experience working in a library setting. Decl. of Emily King, Def.'s Ex. 11, ECF No. 30-11 at ¶ 9 (explaining that Mr. Zahedi's experience, and Hale's lack thereof, "alone was sufficient to make the decision that [Mr. Zahedi] was the better candidate[,]" as he had "the exact experience [CSN] needed in the eLearning Librarian role."); Decl. of Caprice Roberson, Def.'s Ex. 10, ECF No. 30-10 at ¶ 8 (explaining that Hale lacked "experience in practical librarian role[,]" and while Hale "taught other students how to be librarians, [] he

himself did not display the experience working at reference desk or helping students troubleshoot their issues in the library" and "[t]here is a big difference between teaching concepts to librarian students and helping the general student population, as a librarian."). Thus, Hale cannot establish the second factor in a prima facie claim of race discrimination, so his claim fails and summary judgment in CSN's favor is warranted.

IV.     Conclusion

IT IS THEREFORE ORDERED that CSN's motion for summary judgment [ECF No. 29] is GRANTED.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: July 16, 2024

_____
Cristina D. Silva
United States District Judge